JUDGE DAVID BRIONES

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

FILED
2022 JUN 29  AM 8: 58
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____

|  |  |
|---|---|
| **ERIK SALAIZ,** | § |
| | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | § |
| | § |
| **VERCY L.L.C.,** a California Limited Liability | § |
| Company and **NADER SEPEHR** | § |
| | § |
| | § |
| **Defendants.** | § |
| | § |

**EP22CV0224**

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff ERIK SALAIZ ("Plaintiff") is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant VERCY, L.L.C. ("Vercy") is a Limited Liability Company organized and existing under the laws of California with its principal address at 17748 Sky Park Circle Suite 200 Irvine, California 92614 and can be served via registered agent Nader Sepehr at 4533 Macarthur Boulevard, Suite 216 Newport Beach, CA 92660.

3. Defendant Nader Sepehr ("Sepehr") is a natural person, resident of California, Manager and owner of Vercy and can be served at 4533 Macarthur Boulevard, Suite 216 Newport Beach, California 92660.

4. Defendants Vercy and Sepehr are hereinafter collectively referred together as "Defendants".

1

## NATURE OF ACTION

5. Plaintiff brings this Complaint and Demand for Jury Trial against Defendants to stop placing illegal robo and unauthorized calls to Plaintiff's personal cell phone and to obtain redress as authorized by statute.

6. Defendants offer tax debt relief services to consumers. As part of marketing their services, Defendant Vercy and their agents placed illegal robocalls to Plaintiff's cell phone using an automatic telephone dialing system ("ATDS") and a prerecorded voice message.

7. Defendant Vercy makes unsolicited and unauthorized phone calls to thousands of consumers using prerecorded voice messages to sell their services.

8. Defendants did not obtain express written consent from Plaintiff prior to calling his cell phone, and Defendants are therefore liable under the Telephone Consumer Protection Act 47 U.S.C. § 227 (the "TCPA") and its implementing regulation, 47 C.F.R. § 64.1200(a)(2).

9. The TCPA targets illegal robocalls calls exactly like the ones alleged in this case, based on Defendant Vercy's use of technological equipment to spam consumers on a grand scale without their consent.

10. By placing the calls at issue, Defendants have violated the statutory rights and privacy of Plaintiff and caused him to suffer damages that are recognized by statute.

11. Plaintiff therefore seeks an injunction requiring Defendants to stop calling his personal cell phone, as well as an award of actual and statutory damages, civil penalties, costs and reasonable attorneys' fees.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

12. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

13. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

14. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

15. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

16. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

17. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

18. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

19. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

20. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

21. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made

bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

22. The FCC confirmed this principle in 2013, when it explained that "a seller ...may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

23. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

24. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## JURISDICTION AND VENUE

25. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal

statute.

26. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

27. This Court has personal jurisdiction over Defendants because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

28. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants regularly conducts business in the state of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## FACTUAL ALLEGATIONS

29. Plaintiff's personal cell phone (915) 490-0898 has been successfully registered on the National-Do-Not-Call-Registry since August 2021.

30. Defendants have been sued on multiple occasions for violating the TCPA including a lawsuit Plaintiff previously filed against Defendants *Salaiz v. Vercy, L.L.C. et al* No. 3:22-cv-00008-KC (W.D.TX, Jan. 03, 2022).

31. Plaintiff and Defendants resolved their case and executed a settlement agreement on April 20, 2022, and Plaintiff advised Defendants counsel Brent Phillips ("Phillips") he did not need Defendants tax relief services and requested to never receive anymore more calls from Defendants.

32. Despite Plaintiff's request, Defendant Vercy's representatives have continued to make illegal robocalls to Plaintiff's personal cell phone at the control of Defendant Sepehr.

33. The phone calls alleged in this case that Plaintiff received from Defendants are all knowing and willful.

34. Defendant Vercy offers tax debt relief services to consumers who owe back taxes to the IRS.

35. Defendant Sepehr is the manager and owner of Vercy and controls and dominates Vercy.

36. Defendant Sepehr approves of the illegal robocalls with prerecorded voice messages soliciting Defendants services made to thousands of consumers cellular and residential phone numbers using an ATDS.

37. Defendant Sepehr provides instruction and guidance on who to solicit and the minimum qualifications of potential clients.

38. Defendant Sepehr has full control over Vercy and has the authority to stop the illegal robocalls however has refused to do so because it benefits defendants financially when consumers sign up for Defendant Vercy's services.

39. On April 21, 2022, Plaintiff received a call to his personal cell phone 0898 from a representative from Defendant Vercy named Ursula Jaquez that stated she was calling to follow and see if Plaintiff wanted to proceed with the tax investigation.

40. Plaintiff asked Ursula if this was Vercy tax and she confirmed it was. Plaintiff advised Ursula he would call them back if he wanted to proceed.

41. Ursula emailed Plaintiff her information. *See "Exhibit A"*.

42. On May 5, 2022, Plaintiff received a call to his personal cell phone 0898 from Ursula that stated she was calling to follow up.

43. Plaintiff advised Ursula he would call her back if he wanted to proceed.

44. Ursula emailed Plaintiff her information. *See "Exhibit B".*

45. On June 1, 2022, Plaintiff received a prerecorded ringless voicemail drop from

Defendants that stated,

"Hi this is Natalie calling from tax relief center we've been trying to reach you about your past due taxes that we show in our system just wanted to let you know we can help you get that back tax debt settled and also get you in compliance with any past due tax returns you may have you can reach me directly at (562) 452-6966 so if you give me a call back today we can do a free consultation and see if we can get you pre-qualified for one of our economic relief programs that way we can reduce or eliminate any tax debt so give me a call back and I really look forward to speaking with you and seeing what we can work out again my name is Natalie with tax relief center and you can reach me at (562) 452-6966."

46. The prerecorded message does not state Defendant Vercy's name.

47. On June 1, 2022, Plaintiff called back (562) 452-6966 for the sole purposes of identifying

the company responsible for the illegal robocall.

48. A representative from Defendant Vercy named Christian answered and stated he was

with tax support. Plaintiff advised Christian that he was returning a call that he received

from Natalie. Christian advised Plaintiff that Natalie was calling Plaintiff to see if he

owed any tax debt to the IRS.

49. Plaintiff advised Christian he owed back taxes for the sole purposes of identifying the

company responsible for the illegal robocall.

50. Christian then collected Plaintiff's personal and employment information.

51. Christian advised Plaintiff he was eligible for tax debt relief and solicited Plaintiff for tax

debt relief services on behalf of Defendants.

52. Christian emailed Plaintiff with a contract to sign and his contact information confirming

this was another robocall from Defendants. *"See Exhibit C."*

53. Plaintiff emailed Defendants counsel Brent Phillips to

    bphillips@phillipslawcorporation.com  a few moments after speaking with Christian to

    advise him that the calls have continued. Till this day, Brent Phillips has never responded

    back to Plaintiff's email.

54. On June 9, 2022, Plaintiff received a call from Christian to follow up and see if Plaintiff

    still wanted to proceed with their program. Plaintiff advised Christian not at the moment

    and advised Christian, he would call them back if he was interested.

55. On June 15, 2022, Plaintiff received a call from Christian to follow up and see if Plaintiff

    still wanted to continue with their program. Plaintiff advised Christian he had already

    mentioned to hold off and advised Christian he would call them back if he was interested.

56. On June 23, 2022, Plaintiff received a call from Christian to follow up and advised

    Plaintiff that he understands he doesn't want to move forward with the program yet but is

    able to push back the tax investigation fee for Plaintiff.

57. Plaintiff advised Christian that he has his direct line and will call him if he wanted to

    proceed.

58. A few hours later on June 23, 2022, Plaintiff received another call from Defendants.

    Plaintiff answered and heard the following prerecorded voice message that stated,

    "Hi this is Jule from the tax relief center I have great news for you it looks like you may be a
    good candidate for the IRS fresh start program if you qualify you will pay a fraction of the cost to
    settle your debt let us help you get this taken care of before the program expires press one to get
    tax help."

59. The prerecorded message does not state Defendant Vercy's name.

60. Plaintiff pressed one for the sole purposes of identifying the company responsible for the

    illegal robocall.

61. Plaintiff was then transferred to a representative from Defendants named Jared.

62. Jared advised Plaintiff they were reaching out to see if he needed help with any back taxes he may owe to the IRS.

63. Plaintiff advised Jared he owed back taxes for the sole purpose of identifying the company responsible for the illegal robocall.

64. Jared then collected Plaintiff's personal and employment information.

65. Jared advised Plaintiff he went over the file with his case manager, and they determined Plaintiff was eligible for the fresh start program and solicited Plaintiff for tax debt relief services on behalf of Defendants.

66. Jared emailed Plaintiff with a service agreement and his contact information confirming this was another robocall from Defendants. *"See Exhibit D."*

67. A few hours later on June 23, 2022, Plaintiff received another call from Jared to follow up.

68. Plaintiff emailed Jared and advised him that he was not interested and to please stop calling. *"See Exhibit E."*

69. On June 24, 2022, Plaintiff received another call from Defendant Vercy. Plaintiff answered and heard the same prerecorded voice message from the day prior that stated,

"Hi this is Jule from the tax relief center I have great news for you it looks like you may be a good candidate for the IRS fresh start program if you qualify you will pay a fraction of the cost to settle your debt let us help you get this taken care of before the program expires press one to get tax help."

70. The prerecorded message does not state Defendant Vercy's name.

71. Plaintiff pressed one for the sole purposes of identifying the company responsible for the illegal robocall.

72. Plaintiff was then connected to a representative named Karen. Karen advised Plaintiff they were reaching out to see if he needed assistance with his tax debt.

73. Plaintiff advised Karen he spoke with one of their representatives yesterday Jared from Vercy tax. Karen acknowledged it was Vercy.

74. Plaintiff never gave his prior express written consent to receive any illegal robocalls or follow up calls from any of Defendant Vercy's representatives.

75. Plaintiff has never had any business relationship with Defendants.

76. Table below displays the phone calls Plaintiff received from Defendants:

| Number: | Date | Time | Caller ID | Notes |
|---------|------|------|-----------|-------|
| 1 | 04/21/2022 | 2:21 PM | 949-483-8498 | Direct call from Vercy rep Ursula Jaquez |
| 2 | 05/05/2022 | 11:15 AM | 949-483-8498 | Direct call from Vercy rep Ursula Jaquez |
| 3 | 05/26/2022 | 2:48 PM | 949-606-9251 | Direct call from Vercy. Missed Call |
| 4 | 06/01/2022 | 8:12 AM | 424-243-2597 | Ringless automated voice mail drop with call back number from Vercy. |
| 5 | 06/09/2022 | 11:26 AM | 949-404-4420 | Direct call from Vercy rep Christian Seebold |
| 6 | 06/15/2022 | 10:16 AM | 949-404-4420 | Direct call from Vercy rep Christian Seebold |
| 7 | 06/17/2022 | 11:54 AM | 949-404-4420 | Direct call from Vercy. Missed Call |
| 8 | 06/23/2022 | 11:29 AM | 949-404-4420 | Direct call from Vercy rep Christian Seebold |
| 9 | 06/23/2022 | 3:08 PM | 951-944-0490 | Robocall from Vercy spoke with rep Jared Orna |
| 10 | 06/23/2022 | 6:11 PM | 949-606-0871 | Direct call from Vercy rep Jared. Emailed him not interested. |
| 11 | 06/24/2022 | 10:40 AM | 619-830-2207 | Robocall from Vercy spoke with rep Karen |

77. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

78. None of the Defendants are registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The

https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain any of the Defendants registrations.

79. None of the Defendants qualify for an exemption under § 302.053.

80. The Defendants have never sent Mr. Salaiz any do-not-call policy.  Plaintiff sent an internal do-not-call policy request to info@vercytax.com on December 27, 2021. *"See Exhibit F"*.

81. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Mr. Salaiz the unsolicited calls.

82.  On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

83. Defendant Sepehr participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

84. Defendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy. This is amply supported by the complaints Defendants receive that are available from the Better Business Bureau ("BBB"). The full scale of the complaints Defendants receive is not currently available to Plaintiff but will be revealed through discovery to amplify what is shown below.

85. Defendants refuse to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendants financially.

## **DEFENDANT SEPEHR IS PERSONALLY LIABLE**

86. Defendant Sepehr refuses to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendant Sepehr financially when consumers sign up for Defendant Vercy's tax relief services.

87. "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

88. The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

89. Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations.  They were the two persons who controlled all of Blastfax's day-to-day operations.  They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct.  And they did so with their eyes and pocketbooks wide open.  After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA.  On February 9, 2001, they knew they were.  Yet they continued to direct their company to send unsolicited intrastate fax advertisements.  This is fare more than a simple derivative liability case.  Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit."  Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

90. The Same Court held that corporate officers were also personally liable for DTPA violations

The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct.....For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation......Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

91. At all times material to the Complaint, acting alone or in concert with others, Defendant Sepehr has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Vercy including the acts or practices set forth in this Complaint.

92. Defendant Sepehr is the principal director and operator of Defendant Vercy controls the day-to-day operations of Vercy and directed their employees, agents, salespersons, and

solicitors to make TCPA violating phone calls and to solicit tax relief services on behalf of Vercy.

93. Defendant Sepehr approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for Defendants financial benefit.

94. Defendant Sepehr knowingly and willfully ignores the law. Defendants continue to solicit tax relief services via prerecorded voice messages.  These violations are the direct result of the instructions Defendant Sepehr has given to their agents, employees, solicitors, salespersons, and others that carry out his schemes.

95. Defendant Sepehr is not merely a bystander and is the mastermind that scheme, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

96. Defendant Sepehr is well aware their conduct violated the TCPA and Tex. DPTA and refused to alter their behavior.  Defendant Sepehr is the sole director of Vercy and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop.  Yet, Sepehr has taken no steps to stop the behavior because the behavior benefits Sepehr financially.

97. Defendants should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they actually committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

98. Defendant Sepehr should be held liable because to do otherwise would simply allow Sepehr to dissolve Vercy and set up a new corporation and repeat their conduct.  This would result in both the TCPA and DTPA being unenforceable.

## THE TEXAS BUISNESS AND COMMERCE CODE 305.053

99. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

100.    The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

101.    The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

102.    Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

103.    The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

104.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

105.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

106.    Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing robocalls.

107.    Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

108.    Plaintiff has been annoyed, harassed, and irritated by robocalls placed by and/or on behalf of the Defendants.

109.    Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## THE PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

110.    The calls were to the Plaintiff's cellular phone (915) 490-0898, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts.

## CAUSES OF ACTION:

## COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

111.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

112.    Defendants and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least eleven (11) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an automatic telephone dialing system and/or a prerecorded voice without his prior express written consent.

113.    Plaintiff was statutorily damaged at least eleven (11) times under 47 U.S.C. § 227(b)(3)(B) by Defendants by the telephone calls described above, in the amount of $500.00 per call.

114.    Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

115.    Plaintiff is also entitled to and does seek an injunction prohibiting Defendants and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS and/or artificial or prerecorded voice without prior express written consent.

## COUNT TWO:
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

116.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

117.    Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

118.   Plaintiff was statutorily damaged at least eleven (11) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telemarketing calls described above, in the amount of $500.00 per call.

119.   Plaintiff was further statutorily damaged because Defendants willfully and/or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

120.   Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

**COUNT THREE:**
**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**
**(Against All Defendants)**

121.   Plaintiff incorporates the forgoing allegations as if fully set forth herein.

122.   The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

   a.  A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

   b.  Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

   c.  In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

123.   Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

124.   Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR:
### Violations of The Texas Business and Commerce Code 305.053

125.   Plaintiff incorporates the foregoing allegations as if set forth herein.

126.   The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 305.053, by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq. The Defendants violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

127.   Plaintiff is entitled to an award of at least $500 in damages for each such violation. Texas Business and Commerce Code 305.053(b).

128.   Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. Texas Business and Commerce Code 305.053(c).

## COUNT FIVE:
### (Violations of The Texas Business and Commerce Code 302.101)

129.   Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

130.   The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.101, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

131.    Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. Texas Business and Commerce Code 302.302.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for eleven calls.

E.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.      An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

H.      An award to Mr. Salaiz of interest, costs and attorneys' fees, as allowed by law and equity

I.      Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

21

Plaintiff requests a trial by jury of all claims that can be so tried.

June 29, 2022,                              Respectfully Submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-490-0898
Salaiz.ep@gmail.com